Cruz Manuel MARQUEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–04–00349–CR.

Court of Appeals of Texas,
San Antonio.

April 6, 2005.

Rehearing Overruled April 21, 2005.

George E. Shaffer, San Antonio, for appellant.

Robert Lee Little, Asst. Dist. Atty.–293rd Judicial Dist., Eagle Pass, for appellee

Sitting: ALMA L. LÓPEZ, Chief Justice, CATHERINE STONE, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by PHYLIS J. SPEEDLIN, Justice.

Appellant, Cruz Manuel Marquez, was convicted of aggravated sexual assault. On appeal, Marquez contends (1) the trial court erroneously admitted testimony from an outcry witness; and (2) the trial court erred in denying his motion to dismiss on grounds that his right to a speedy trial had been violated. We affirm the judgment of the trial court.

### BACKGROUND

On October 27, 2002, T.M.C. went on a trip to Piedras Negras with her mother, sister, and aunt. On the way, T.M.C. began to cry and stated that Marquez, her mother's former boyfriend, "had tried to touch her." After returning home from Piedras Negras, T.M.C. explained to her mother that, several months before, Marquez had "fingered her." The police were notified of the incident. Marquez was arrested on November 8, 2002, and released on bond that same day. On December 12, 2003, an indictment was returned alleging that Marquez committed aggravated sexual assault. A jury trial commenced on March 15, 2004. Marquez was convicted and sentenced to five years in prison.

### ANALYSIS

#### Outcry Witness Testimony

In his first point of error, Marquez argues the trial court erred in admitting the testimony of Diana Gomez, the victim's mother, as an outcry witness. Marquez contends that the State failed to establish compliance with Article 38.072 of the Texas Code of Criminal Procedure which allows admission of hearsay testimony in the prosecution of certain offenses committed against children twelve years of age or younger. TEX.CODE CRIM. PROC. ANN. art. 38.072 (Vernon Supp.2004–05). The outcry statute applies only to statements made (1) by the child against whom the offense was allegedly committed, and (2) to the first person, eighteen years of age or older, to whom the child made a statement about the offense. *Id.* at § 2(a). To be admissible under this statute, the child's statement to the witness must describe the

alleged offense in some discernible manner and "must be more than words which give a general allusion that something in the area of child abuse was going on." *Garcia v. State,* 792 S.W.2d 88, 91 (Tex.Crim.App. 1990).

A trial court has broad discretion in determining the admissibility of outcry statements pursuant to this statute, and the trial court's exercise of that discretion will not be disturbed on appeal unless a clear abuse of discretion is established by the record. *Id.* at 92; *Reed v. State,* 974 S.W.2d 838, 841 (Tex.App.-San Antonio 1998, pet. ref'd). When the trial court's admission of evidence rests on the interpretation of a statute, however, the issue is a question of law and we review the trial court's ruling *de novo. Hohn v. State,* 951 S.W.2d 535, 536 (Tex.App.-Beaumont 1997, no pet.); *see also Bowie v. State,* 135 S.W.3d 55, 59 (Tex.Crim.App.2004) (question of law based on undisputed facts is reviewed *de novo* ).

Marquez argues that the outcry testimony of Diana Gomez was inadmissible because T.M.C. was over the age of twelve at the time of the offense. The pertinent outcry statute only allows hearsay testimony of a child victim "12 years of age or younger." TEX.CODE CRIM. PROC. ANN. art. 38.072 § 1. Here, the indictment alleged that the offense occurred "on or about March 14, 2001." At that time, T.M.C. was 11 years old, clearly within the statute's purview. However, Gomez's trial testimony suggested that the offense may have occurred just five months before the outcry statement was made on October 27, 2002, which would mean that T.M.C. was twelve years old and three months at the time of the offense.[1] Marquez argues that the statutory language "12 years of age or younger" should be interpreted to exclude outcry testimony where the victim has passed his or her twelfth birthday. Marquez asserts that the outcry statute was not applicable because the testimony indicated that T.M.C. had passed her twelfth birthday at the time of the offense. We disagree.

It appears that no other court of appeals has directly addressed the meaning of a child "twelve years of age or younger" under Article 38.072. However, the Court of Criminal Appeals has interpreted the meaning of a child "fourteen years of age or younger" under Texas Penal Code § 22.04(a). *See* TEX. PEN.CODE ANN. § 22.04(a) (Vernon 2003); *Phillips v. State,* 588 S.W.2d 378, 380 (Tex.Crim.App.1979)(holding statute was intended to protect children who are fourteen years of age and children who are under fourteen, and citing ten other statutes with similar interpretations). Under the reasoning of *Phillips,* since the phrase "12 years of age or under" in Article 38.072 is written in the disjunctive, it is clear that the statute is intended to apply to two distinct groups of children: those who are twelve years of age and those who are under twelve at the time the offense is committed. *See Phillips,* 588 S.W.2d at 380. Therefore, we hold Article 38.072 applies to children who have not yet reached their thirteenth birthday. *See id.*

Here, the evidence established that T.M.C. was, at most, twelve years old and three months when the offense occurred. Thus, regardless of whether the offense occurred on the date alleged in the indictment or five months before the outcry statement, the record is clear that T.M.C. had not yet reached her thirteenth birthday at the time of the offense. The trial court was correct in ruling that the outcry statement fell within Article 38.072 be-

---

1. T.M.C.'s date of birth is February 14, 1990.

cause T.M.C. was "12 years of age or under" at the time of the offense.

■ Marquez also argues that T.M.C.'s initial outcry claiming that Marquez "had tried to touch her" was inadmissible because it was only "a general allusion that something in the area of child abuse was going on." *See Garcia*, 792 S.W.2d at 91. However, the record shows that once T.M.C. and her mother returned home, T.M.C. specifically stated that Marquez had "fingered her" and that he "put his finger inside her." The trial court properly admitted all of Gomez's outcry testimony because T.M.C.'s subsequent statement sufficiently described the offense and was part of the same outcry statement as her initial statement. *See Norris v. State*, 788 S.W.2d 65, 69 (Tex.App.-Dallas 1990, pet. ref'd) (child's subsequent outcry statement describing the nature of the offense was admissible as part of the same outcry as initial statement); *Moon v. State*, 856 S.W.2d 276, 281 (Tex.App.-Fort Worth 1993, pet. ref'd)(children's statements were one continuous outcry told over several weeks).

■ Finally, Marquez argues that the outcry testimony should not have been admitted because T.M.C.'s outcry was not reliable. As a predicate for admission, the trial court must find that the outcry statement is reliable based on "the time, content, and circumstances of the statement." TEX.CODE CRIM. PROC. ANN. art. 38.072 § 2(b)(2). The phrase "time, content, and circumstances" refers to the time the child makes the statement to the proffered outcry witness, the content of the statement, and the circumstances surrounding the making of the statement. *Broderick v. State*, 89 S.W.3d 696, 699 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd)(quoting *MacGilfrey v. State*, 52 S.W.3d 918, 921 (Tex.App.-Beaumont 2001, no pet.)). The determination of whether outcry testimony is reliable must be made on a case-by-case basis, and is reviewed for abuse of discretion. *Davidson v. State*, 80 S.W.3d 132, 139 (Tex.App.-Texarkana 2002, pet. ref'd); *Reed*, 974 S.W.2d at 841.

Here, Marquez argues that the outcry statement was unreliable because the content of Gomez's testimony was not consistent with the testimony of T.M.C. Specifically, Marquez points to Gomez's testimony that on the way to Piedras Negras, T.M.C. told her Marquez "had tried to touch her," and T.M.C.'s own testimony that she could not stop crying on the way to Piedras Negras and therefore did not tell her mother anything until they got home. Marquez asserts that this inconsistency indicates that the outcry statement was not reliable and should not have been admitted. While the testimony of Gomez and T.M.C. is not identical, we do not find it to be so contradictory that it undermines the reliability of the outcry testimony. Both Gomez and T.M.C. testified that T.M.C. was too upset to describe the details of the offense until they returned home. Further, Gomez's testimony describing the more detailed outcry statement made by T.M.C. once they returned home was entirely consistent with T.M.C.'s testimony. Any inconsistency between the testimony of Gomez and T.M.C. is a matter of credibility and goes to the weight of the evidence, not its admissibility. *See Tex. Dept. Public Safety v. Walter*, 979 S.W.2d 22, 27 (Tex.App.-Houston [14th Dist.] 1998, no pet.). Therefore, we hold that the trial court did not abuse its discretion by finding that the outcry statement was reliable and admissible. Marquez's first point of error is overruled.

### Right to Speedy Trial

■ In his second point of error, Marquez argues that he was denied his right to a speedy trial guaranteed by the Sixth Amendment of the United States

Constitution and Article I, section 10, of the Texas Constitution. U.S. Const. amend. VI; Tex. Const. art. I, § 10. We apply a bifurcated standard of review when reviewing a trial court's decision on a speedy trial claim. *State v. Munoz*, 991 S.W.2d 818, 821 (Tex.Crim.App.1999). We review the trial court's determination of historical facts under an abuse of discretion standard, while we review *de novo* the trial court's application of the law to the facts. *Id.* When, as here, the defendant does not prevail on a speedy trial claim, we presume the trial court resolved any disputed fact issues in favor of the State, and we defer to the implied findings of fact supported by the record. *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex.Crim.App. 2002). In determining whether a defendant's right to a speedy trial has been violated, we weigh and balance four factors: (1) length of the delay; (2) reasons for the delay; (3) assertion of the right; and (4) prejudice to the defendant resulting from the delay. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Munoz*, 991 S.W.2d at 821. This balancing test requires weighing caseby-case "the conduct of both the prosecution and the defendant," and no single factor is a "necessary or sufficient condition to the finding" of a speedy trial violation. *Munoz*, 991 S.W.2d at 821 (quoting *Barker*, 407 U.S. at 530, 533, 92 S.Ct. 2182). The *Barker* factors are considered together along with any other circumstances that may be relevant. *Id.* We address the four *Barker* factors below.

### 1. Length of the Delay

 The length of delay is a triggering mechanism for analysis of the other *Barker* factors. *Id.* Further analysis is required if the length of the delay is "presumptively prejudicial." *State v. Rangel*, 980 S.W.2d 840, 843 (Tex.App.-San Antonio 1998, no pet.). Texas courts have generally found a delay beyond eight months to be presumptively prejudicial, thus triggering further analysis of the *Barker* factors. *Id.* The length of the delay is measured from the time the defendant is arrested or formally accused. *Id.* Here, Marquez was arrested on November 8, 2002. The indictment was returned on December 12, 2003, and Marquez went to trial on March 15, 2004. The State concedes, and we agree, that the sixteen-month delay between the date of arrest and the date of trial triggers consideration of the remaining three *Barker* factors. *See Dragoo v. State*, 96 S.W.3d 308, 314 (Tex.Crim.App. 2003) ("[i]n general, courts deem delay approaching one year to be 'unreasonable enough to trigger the *Barker* [i]nquiry,'" quoting *Doggett v. United States*, 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992)).

### 2. Reasons for the Delay

 Upon a finding that a presumptively prejudicial delay has occurred, the State bears the initial burden of justifying the delay. *Rangel*, 980 S.W.2d at 843. Different weights are assigned to different reasons for a delay. *Munoz*, 991 S.W.2d at 822. A deliberate attempt to delay a trial is weighed heavily against the State, while more neutral reasons such as negligence or overcrowded dockets are weighed less heavily. *Id.* If the record is silent regarding the reason for the delay, we presume neither a deliberate attempt by the State to prejudice the defense, nor a valid reason for the delay. *Dragoo*, 96 S.W.3d at 314.

Here, nothing in the record indicates the reason for the delay and the State has failed to offer any justification. Therefore, this factor is weighed against the State, since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. *See Zamorano*, 84 S.W.3d at 649. However,

because there is no evidence that the State deliberately attempted to delay the trial, this factor is not weighed heavily against the State. *See id.* at 649–50; *Dragoo,* 96 S.W.3d at 314.

### 3. Assertion of the Right

The third factor that a trial court must consider is the defendant's assertion of his right to a speedy trial. *Munoz,* 991 S.W.2d at 825. A defendant is responsible for asserting or demanding his right to a speedy trial. *Id.* A lengthy delay or lack of persistence in asserting the right attenuates a speedy trial claim. *Russell v. State,* 90 S.W.3d 865, 873 (Tex. App.-San Antonio 2002, pet. ref'd). However, a defendant's failure to assert his right to a speedy trial is not necessarily dispositive of his claim. *Munoz,* 991 S.W.2d at 825. Instead, a defendant's failure to do so is weighed and balanced with the other *Barker* factors. *Id.* A defendant's failure to assert his right makes it more difficult for him to prove he was denied a speedy trial. *Id.*

Here, Marquez filed a motion to dismiss for violation of his right to a speedy trial and requested a hearing on February 17, 2004, two months after his indictment was returned, and one month before his trial was held. However, Marquez did not demand a speedy trial; rather, he sought a dismissal of the indictment. Marquez's motivation in asking for a dismissal rather than a prompt trial is relevant and attenuates the strength of his speedy trial claim. *See Phillips v. State,* 650 S.W.2d 396, 401 (Tex.Crim.App.1983); *see also McCarty v. State,* 498 S.W.2d 212, 215–16 (Tex.Crim. App.1973) (stating that a defendant's speedy trial claim is weakened where his prime object is not to gain a speedy trial but to have the charges against him dismissed). This factor weighs against Marquez, although not heavily.

### 4. Prejudice Caused by the Delay

The last *Barker* factor is prejudice to the defendant. *Munoz,* 991 S.W.2d at 826. Prejudice to the defendant is assessed in light of the interests the right to a speedy trial is designed to protect: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *Id.* Of these interests, the most important is protecting a defendant's ability to adequately prepare his defense because compromise of this interest "skews the fairness of the entire system." *Id.* (quoting *Barker,* 407 U.S. at 532–33, 92 S.Ct. 2182). The defendant has the burden to make some showing of prejudice, although a showing of actual prejudice is not required. *Id.* When the defendant makes a prima facie showing of prejudice, the burden shifts to the State to show that the defendant suffered "no serious prejudice beyond that which ensued from the ordinary and inevitable delay." *Id.* (quoting *Ex parte McKenzie,* 491 S.W.2d 122, 123 (Tex.Crim.App.1973)). For purposes of showing a speedy trial violation, the prejudice suffered by the defendant must emanate from the delay. *Anderson v. State,* 8 S.W.3d 387, 392 (Tex.App.-Amarillo 1999, pet. ref'd).

Here, Marquez does not attempt to show that he was subjected to oppressive pretrial incarceration as he was promptly released on bail pending trial. Rather, Marquez argues that the delay in his case caused him anxiety and caused his defense to be impaired. The only evidence that Marquez presented to show anxiety was his own testimony. Marquez testified that as a result of the delay, he was nervous, and subject to public ridicule and embarrassment. He also testified that his employment was impaired because the charges prevented him from transferring

or retiring. Since the State did not rebut Marquez's testimony, it constitutes a prima facie showing that Marquez suffered anxiety due to the delay. *Zamorano,* 84 S.W.3d at 654.

In attempting to show his defense was impaired as a result of the delay, Marquez testified that some of his co-workers were unavailable to testify on his behalf because they had been transferred. In order to make "some showing of prejudice" on this sub-issue, Marquez must show the witnesses were unavailable for trial, their testimony would have been relevant and material to his defense, and that he used due diligence to locate the witnesses for trial. *Harris v. State,* 489 S.W.2d 303, 308 (Tex. Crim.App.1973); *Meyer v. State,* 27 S.W.3d 644, 650 (Tex.App.-Waco 2000, pet. ref'd). Marquez has failed to show what material information these witnesses would have provided in their testimony, how it would have benefited his defense, and that he diligently attempted to secure their presence. Consequently, Marquez has failed to make a prima facie showing that his defense was impaired by the absence of these witnesses.

Marquez also contends that his defense was impaired due to the dimming memories of the State's witnesses. To make a showing of prejudice based on dimming memories, Marquez is required to show that the "lapses of memory" are in some way "significant to the outcome" of the case. *Munoz,* 991 S.W.2d at 829 (quoting *Barker,* 407 U.S. at 534, 92 S.Ct. 2182). Marquez asserts the witnesses were unable to consistently remember when the alleged offense occurred, and that this inconsistency was significant because it was determinative of whether the outcry testimony would be admitted. However, as noted *supra,* the evidence was undisputed that T.M.C. had not yet turned thirteen on the date of the outcry statement; therefore, the offense necessarily occurred prior

to her thirteenth birthday, making the outcry testimony admissible under Article 38.072. Marquez has not made a prima facie showing that his defense was impaired due to dimming witness memories.

While Marquez presented some evidence that the delay caused him some anxiety, he failed to make a prima facie showing that his defense was impaired by the delay. We conclude any prejudice that Marquez suffered as a result of the delay was "minimal," and this factor should be weighed against him. *See Schenekl v. State,* 996 S.W.2d 305, 314 (Tex.App.-Fort Worth 1999) ("[t]hough appellant has established, and the State has failed to rebut, the anxiety element, it is not enough to cause the prejudice prong to weigh in appellant's favor."), *aff'd,* 30 S.W.3d 412. (Tex.Crim. App.2000); *Munoz,* 991 S.W.2d at 829 (prejudice was "minimal" where defendant was incarcerated for seventeen months and was able to show oppressive pretrial incarceration and anxiety, but failed to show that his defense was impaired by the delay).

Weighing the *Barker* factors based on the record before us, we conclude that Marquez's right to a speedy trial was not violated. While there was no explanation for the delay and Marquez did assert his right to a speedy trial, Marquez's claim is weakened by the fact that he sought a dismissal of the indictment rather than a speedy trial. Furthermore, Marquez was released on bond pending trial and was only able to show a minimal degree of prejudice as a result of the delay. We overrule this issue on appeal.

The judgment of the trial court is affirmed.