MEMORANDUM OPINION



No. 04-06-00695-CR



Jose ESQUIVEL, JR.,


Appellant



v.



The STATE of Texas,


Appellee



From the 83rd Judicial District Court, Val Verde County, Texas


Trial Court No. 10,679


Honorable James M. Simmonds, (1) Judge Presiding



Opinion by: Karen Angelini, Justice


Sitting: Catherine Stone, Justice

 Karen Angelini, Justice

 Rebecca Simmons, Justice


Delivered and Filed: October 31, 2007


AFFIRMED

 Appellant, Jose Esquivel, Jr., ("Esquivel"), appeals his conviction for Indecency with a Child
by Exposure, raising the following issues: 1) the trial court erred in denying the motion to dismiss
for failure to afford him a speedy trial; 2) the evidence was legally and factually insufficient to
support his conviction for Indecency with a Child by Exposure; and 3) the trial court erred in
charging the jury on the issue of voluntary intoxication. We affirm the trial court's judgment.

Factual History


 Esquivel began dating Genoveva Ozuna ("Ozuna") sometime following the death of her
husband and eventually moved into Ozuna's two-bedroom apartment with Ozuna and her minor
daughter, M.O. On November 29, 2004, M.O., who was then fifteen years old, went to the police
station with her older brother and reported that Esquivel had sexually molested her the previous
night. 

 At trial, M.O. testified that, at approximately 3:30 a.m., she heard Esquivel return from a bar
where he reportedly went drinking three to four times a week. M.O. heard Esquivel come in the front
door, walk down the hallway, pass her bedroom, and then enter her mother's bedroom. Sometime
later, M.O. heard Esquivel walk out of her mother's bedroom and walk into the bathroom, located
directly across from her mother's bedroom. M.O.'s bedroom was located immediately adjacent to
her mother's bedroom. M.O. testified she dozed off but was awakened when she felt her anus being
penetrated by either a finger or a penis. M.O. immediately recognized the perpetrator as Esquivel,
who was completely naked in her bed, had blood shot eyes, and smelled of alcohol. M.O. testified
that she jumped out of bed and ran out of her bedroom, calling for her mother. As she was running
out of her bedroom, M.O. heard Esquivel call her "baby" and ask her to come back. M.O. further
testified that when this incident occurred, she was heavy and had long black hair while her mother
was thin and had short blond hair. 

 M.O. also testified that she bled following this incident but that she threw away her
underwear; however a physical examination performed shortly after the incident revealed no
evidence of trauma. Further, M.O. admitted to disliking Esquivel, who, according to M.O., began
dating and living with her mother shortly after the death of her father. M.O. further testified that
Esquivel drank a lot and treated Ozuna badly when he was drinking. Additionally, M.O. stated that
Esquivel had previously told her he did not want young girls at the apartment because he was afraid
he might get into trouble. 

 Ozuna, M.O.'s mother, initially denied that Esquivel ever lived with her and her daughter at
the apartment. She testified that she and Esquivel had been dating for three years prior to the
incident, and that Esquivel would stay over from time to time; however, on redirect, Ozuna admitted
that Esquivel had, in fact, lived with her and her daughter for a period of time. Further, Ozuna stated
she did not believe Esquivel had sexually assaulted her daughter, notwithstanding the fact that she
saw him lying naked in her daughter's bed. And she testified that her daughter had not always been
truthful in the past. However, Ozuna also testified that she was afraid of Esquivel. 

 Additionally, M.O.'s brother testified that Esquivel was nice when he was not drinking but
that he changed altogether while under the influence of alcohol. Esquivel presented no evidence or
witnesses at trial.

Procedural History

 The incident occurred on November 28, 2004, and the first indictment was filed on April 19,
2005. Esquivel was arrested on June 4, 2005, and the case was originally set for trial on February
21, 2006, ten months after Esquivel was first indicted. However, on February 13, 2006, the State
filed a second indictment that included four enhancements that had not been alleged in the first
indictment. Neither Esquivel nor his attorney was apprised of this second indictment until February
15, 2006, when the parties convened for a pretrial hearing. On this date, the State announced it was
ready to proceed on the second indictment. Esquivel's attorney objected to this second indictment
and announced he was ready to proceed on the first indictment. He argued that although he had not
yet seen this second indictment, he believed it merely added enhancements for prior offenses that
the State had known about for three months. Moreover, Esquivel's attorney asserted that "[i]f the
Court is inclined to give [the State] another opportunity to give them the time to continue this case,
then I feel that we have a pretty strong speedy trial argument since [Esquivel's] been in custody that
long, and I would request the Court to dismiss the case." However, a written speedy trial motion was
not filed at that time and no ruling from the trial court was obtained. Esquivel's trial counsel
thereafter invoked his right to receive his ten days' notice of an amended indictment prior to trial,
and the trial judge indicated he would continue the case at the State's request. 

 On February 17, 2006, the case was called for pretrial proceedings and the trial judge noted
that the indictment incorrectly stated the term as January 2005 rather than January 2006. The trial
judge told the State it would need to amend the indictment, and the State agreed to do so. On
February 22, 2006, the day following the original trial setting, Esquivel's attorney filed a "Motion
to Dismiss Prosecution For Failure To Afford Defendant's Right To A Speedy Trial." No hearing
was held on this motion, nor does the record reflect that a hearing was sought or that a ruling was
obtained. 

 On April 28, 2006, the State filed a third indictment that corrected the error contained in the
second indictment, deleted one of the four enhancement paragraphs, and included an additional
manner and means of committing the offense. On May 30, 2006, the case was called for pretrial
proceedings, whereupon the State announced it had filed a motion to dismiss the second indictment
that very day, and that Esquivel had been re-indicted a third time. That day, Esquivel's trial counsel
filed a second "Motion to Dismiss Prosecution For Failure To Afford Defendant's Right To A
Speedy Trial," and a hearing was held. Esquivel's motion to dismiss was denied, and on June 26,
2006, over fourteen months after he was indicted, Esquivel was tried based on the third indictment. 

I. Speedy Trial


 Both the Sixth Amendment to the United States Constitution and article I, section 10, of the
Texas Constitution guarantee an accused the right to a speedy trial. See U.S. Const. amend. VI;
Barker v. Wingo, 407 U.S. 514, 515 (1972); Tex. Const. art. I, § 10; Zamorano v. State, 84 S.W.3d
643, 647 (Tex. Crim. App. 2002). Although an accused's right to a speedy trial under the Texas
Constitution exists independently of the federal guarantee, the Texas Court of Criminal Appeals has
traditionally analyzed claims of a denial of the state speedy trial right under the factors established
in Barker v. Wingo, 407 U.S. 514 (1972). See Zamorano, 84 S.W.3d at 648.

 Under Barker v. Wingo, we analyze speedy trial claims by weighing and balancing four
factors: (1) length of the delay; (2) reasons for the delay; (3) assertion of the right; and (4) prejudice
to the defendant resulting from the delay. Zamorano, 84 S.W.3d at 647-48 (citing Barker, 407 U.S.
at 530). This balancing test requires weighing the conduct of both the prosecution and the defendant
on a case by case basis. No one factor is a "necessary or sufficient condition to the finding" of a
speedy trial violation. Marquez v. State, 165 S.W.3d 741, 748 (Tex. App.--San Antonio 2005, pet.
ref'd) (citing State v. Munoz, 991 S.W.2d 818, 821(Tex. Crim. App. 1999). The Barker factors are
considered together along with any other circumstances that may be relevant. Id.

 In reviewing the trial court's ruling on an appellant's constitutional speedy trial claim, we
apply an abuse of discretion standard for the factual components and a de novo standard for the legal
components. Id. As Esquivel did not prevail on his speedy trial claim, we must presume the trial
court resolved any disputed fact issues in the State's favor, and we defer to these implied findings
of fact that are supported by the record. See id. 

 We turn now to our review of the four Barker factors.

 A. Length of Delay

 The length of delay is a triggering mechanism for analysis of the other three Barker factors
and is measured from the time the defendant is arrested or formally accused. Dragoo v. State, 96
S.W.3d 308, 313 (Tex. Crim. App. 2003) (citing United States v. Marion, 404 U.S. 307, 313 (1971)).
Unless the delay is presumptively prejudicial, we need not inquire into the other Barker factors. 
Munoz, 991 S.W.2d at 821. A delay approaching one year is generally sufficient to trigger a speedy
trial inquiry. Shaw v. State, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003). 

 Here, Esquivel was first indicted on April 19, 2005, and he was tried on June 26, 2006, more
than fourteen months later. The State concedes that this delay is sufficient to trigger further analysis
under Barker and is a factor that weighs against the State. See id; see also Marquez, 165 S.W.3d at
748 (a delay beyond eight months is presumptively prejudicial). 

 B. Reason for Delay

 Upon finding that a presumptively prejudicial delay has occurred, the State bears the initial
burden of justifying the delay. Rangel, 980 S.W.2d 840, 843 (Tex. App.--San Antonio 1998, no
pet.). When assessing the reason the State assigns to justify the delay, "different weights should be
assigned to different reasons." Barker, 407 U.S. at 531; see also Shaw, 117 S.W.3d at 889; Dragoo,
96 S.W.3d at 314. Thus, a deliberate attempt to delay the trial in order to hamper the defense will
weigh heavily against the State while "a more neutral reason such as negligence or overcrowded
courts" will weigh less heavily against the State. Zamorano, 84 S.W.3d at 649. "In the absence of
an assigned reason for the delay, a court may presume neither a deliberate attempt on the part of the
State to prejudice the defense nor a valid reason for the delay." Dragoo, 96 S.W.3d at 314. A valid
reason serves to justify an appropriate delay. Id. 

 At the February 15, 2006 hearing, Esquivel's attorney argued that the State knew about
Esquivel's prior offenses in November of 2005 but waited three months to re-indict him. The State
insisted, however, that it did attempt to re-indict Esquivel earlier but was unable to do so "for
whatever reason" and thought "maybe the officer didn't show up or it may be one that slipped
through the cracks." Further, at the May 30, 2006 hearing, the State attributed the subsequent delay
to the fact that after its investigator spoke to M.O., the State learned that there was a possibility of
penetration by a penis; as a result, a third indictment was filed including this additional manner and
means.

 Thus, while the record reflects that much of the delay was attributable to the State for various
reasons, there is no evidence that the State deliberately attempted to delay the trial to hinder
Esquivel's defense. Id. ("a court may presume neither a deliberate attempt on the part of the State
to prejudice the defense nor a valid reason for the delay" in the absence of argument and proof).
Accordingly, we do not weigh this factor heavily against the State as we would have had there been
evidence that the State deliberately attempted to delay the trial in order to hamper Esquivel's
defense. Zamorano, 84 S.W.3d at 649; Marquez, 165 S.W.3d at 748-49 (finding no evidence that
the State deliberately attempted to delay the trial, this factor was not weighed heavily against the
State). 



 C. Assertion of Right

 The third factor that a trial court must consider is the defendant's assertion of his right to a
speedy trial. Munoz, 991 S.W.2d at 825. A defendant is responsible for asserting or demanding his
right to a speedy trial and although the failure to do so does not amount to a waiver of the speedy
trial right, a defendant's failure to seek a speedy trial decreases the likelihood that a defendant will
prevail on a speedy trial claim. Shaw, 117 S.W.3d at 890 (citing Barker, 407 U.S. at 532). "Whether
and how a defendant asserts his speedy trial right is closely related to the other three factors because
the strength of his efforts will be shaped by them." Zamorano, 84 S.W.3d at 651. Thus, a defendant's
assertion of his speedy trial right is accorded strong evidentiary weight in ascertaining whether the
defendant is being deprived of the right. Id. "Conversely, a failure to assert the right makes it
difficult for a defendant to prove that he was denied a speedy trial." Id. "This is so because a
defendant's failure to make a timely demand for a speedy trial indicates strongly that he did not
really want one and that he was not prejudiced by not having one." Shaw, 117 S.W.3d at 890; see
also Dragoo, 96 S.W.3d at 314. Further, "the longer the delay becomes, the more likely it is that a
defendant who really wanted a speedy trial would take some action to obtain one." Shaw, 117
S.W.3d at 890; Dragoo, 96 S.W.3d at 314. Thus, "a defendant's inaction weighs more heavily
against a violation the longer the delay becomes." Shaw, 117 S.W.3d at 890; Dragoo, 96 S.W.3d at
314.

 Nothing in the record before us suggests that Esquivel asserted his right to a speedy trial
during the eight months following his arrest while the first indictment was pending. See Barnes v.
State, No. 04-05-00104-CR, 2006 WL 2352419, at *3 (Tex. App.--San Antonio Aug. 16, 2006, no
pet.) (mem. op., not designated for publication). Nevertheless, at the very first trial setting on
February 15, 2006, when Esquivel's attorney learned that the State had re-indicted Esquivel and was
dismissing the first indictment, Esquivel's attorney verbally advised the trial court that he believed
Esquivel's speedy trial rights were being violated. And while Esquivel's trial counsel requested a
dismissal rather than a speedy trial, his verbal motion to dismiss did serve as a means of initially
alerting the trial court and the State of the delay and Esquivel's lack of acquiescence to it. See
Zamorano, 84 S.W.3d at 651 n.40.

 That same day, the trial judge agreed to continue the case and permitted the State to proceed
on the second indictment. Esquivel's trial counsel subsequently filed two motions, on February 22,
2006, and May 30, 2006, asserting a speedy trial violation. However, in each instance, a dismissal
rather than a speedy trial was requested, which weakens a speedy trial claim because it evidences a
desire to avoid trial rather than have a speedy trial. See id. (citing Parkerson v. State, 942 S.W.2d
789, 791 (Tex. App.--Fort Worth 1997, no pet.). Further, nothing in the record suggests that
Esquivel sought a hearing or obtained a ruling on his first motion to dismiss that was filed on
February 22, 2006. See Torres v. State, No. 04-04-00219-CR, 2005 WL 708434, at * 3 (Tex. App.--
San Antonio Mar. 30, 2005, pet. ref'd) (mem. op., not designated for publication) (defendant's lack
of persistence in asserting his speedy trial right by failing to request a hearing and procure a ruling
on his motion constitutes evidence that his right to a speedy trial was not violated). Instead, the
record reflects that a hearing on Esquivel's motion to dismiss was not held until May 30, 2006, three
months after Esquivel verbally advised the trial court that he believed his speedy trial rights were
being violated, and less than two weeks before trial.

 Esquivel's motivation in waiting eight months after his arrest to assert his right to a speedy
trial, not immediately pursuing a hearing on his February 22, 2006 motion, and repeatedly seeking
a dismissal rather than a prompt trial is relevant and attenuates the strength of his speedy trial claim.
See Marquez, 165 S.W.3d at 749 (citing Phillips v. State, 650 S.W.2d 396, 401 (Tex. Crim. App.
1983)). Indeed, in analyzing Esquivel's motions, it is apparent that his prime objective was not to
gain a speedy trial but to have the charges against him dismissed. Accordingly, we weigh this factor
against Esquivel.

 D. Prejudice to the Defendant Resulting from the Delay

 Prejudice should be assessed in light of the interests of defendants that the speedy trial right
was designed to protect. Dragoo, 96 S.W.3d at 315; Zamorano, 84 S.W.3d at 652. The Supreme
Court has identified three such interests: (1) to prevent oppressive pretrial incarceration; (2) to
minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be
impaired. Dragoo, 96 S.W.3d at 315; Zamorano, 84 S.W.3d at 652. "Of these forms of prejudice,
'the most serious is the last, because the inability of a defendant adequately to prepare his case skews
the fairness of the entire system.'" Dragoo, 96 S.W.3d at 315 (quoting Barker, 407 U.S. at 532). The
defendant has the burden of showing he was prejudiced by the delay; however, a showing of actual
prejudice is not required. Id. When the defendant makes a prima facie showing of prejudice, the State
bears the burden of proving that the defendant "suffered no serious prejudice beyond that which
ensued from the ordinary and inevitable delay." Id. (citing Ex parte McKenzie, 491 S.W.2d 122, 123
(Tex. Crim. App. 1973)). Further, the prejudice suffered by the defendant must emanate from the
delay. Marquez, 165 S.W.3d at 749.

 In this case, Esquivel remained incarcerated pending trial because a warrant had been issued
for his arrest as a result of alleged parole violations based on the charges at issue in this case. This
constitutes a prima facie showing of oppressive pretrial incarceration. See Munoz, 991 S.W.2d at
828. With respect to the second consideration, Esquivel's trial counsel presented no evidence that
Esquivel suffered anxiety and concern. Indeed, his motion merely asserted that

 . . .the Defendant has unquestionably suffered actual prejudice. If called to testify at
a hearing on this motion, Defendant will relate the extent to which he has suffered
personal anxiety, unjustifiable prejudice and oppressive restrictions on his liberty as
a direct result of this lengthy delay between arrest and trial. The parole procedure
[sic] have also been unnecessarily delayed pending the outcome of this trial. 


However, Esquivel was not called to testify at the hearing, and his trial counsel did not present any
evidence regarding this second interest. Thus, he failed to provide evidence that Esquivel 
experienced any "anxiety or concern beyond the level normally associated with being charged with
a felony," and therefore, did not meet his burden. (2) Barnes, 2006 WL 2352419, *3 (quoting Shaw,
117 S.W.3d at 890); see also Thompson v. State, 983 S.W.2d 780, 785 (Tex. App.--El Paso 1998,
pet. ref'd) (rejecting defendant's claim of pretrial anxiety where no evidence was presented to
support claim and a certain amount of anxiety could be expected due to the nature of the pending
charges). 

 Finally, we must determine whether Esquivel made a prima facie showing that his defense
was impaired by the delay. This last consideration is the most serious "because the inability of a
defendant adequately to prepare his case skews the fairness of the entire system." Jones v. State, No.
04-05-00777-CR, 2007 WL 246876, at *5 (Tex. App.--San Antonio Jan. 31, 2007, pet. ref'd) (mem.
op., not designated for publication) (citing Barker, 407 U.S. at 532). Esquivel's counsel argued that
Esquivel's defense was impaired by the delay because the pattern of dismissals and re-indictments
in this case made it impossible to be certain what charges would ultimately make it to trial. However,
no evidence was presented that Esquivel's defense was in any way impaired, that testimony or
evidence was compromised, that any witnesses were lost, or that he otherwise suffered prejudice
from the delay. See Marquez, 165 S.W.3d at 750.

 Accordingly, our review of the record as a whole supports a finding that the prejudice to
Esquivel was minimal. Although Esquivel was incarcerated for over a year before his trial, he did
not provide any evidence of anxiety or distress and most importantly, did not show that his defense
was impaired. See id.

 E. Balancing the Barker Factors:

 Weighing the Barker factors based on the record before us, we conclude that Esquivel's right
to a speedy trial was not violated. The first two factors, excessive delay and reason for the delay, are
factors that weigh against the State, although the latter does not weigh heavily against the State given
that there was no evidence the State deliberately attempted to cause the delay. Additionally, we
weigh the third factor, assertion of rights, against Esquivel because, although he complains of a
fourteen-month delay, he did not assert his right to a speedy trial until eight months after he was
arrested, did not immediately request a hearing, and repeatedly sought a dismissal rather than a
speedy trial date. Finally, with respect to the last factor, prejudice to the defendant, Esquivel failed
to show that he suffered more than a minimal prejudice as a result of the delay. Indeed, Esquivel
failed to present any evidence that the fourteen-month delay in this case impaired his defense.

 Applying the balancing test to the facts of this case, we conclude that the factors weigh
against finding a violation of Esquivel's right to a speedy trial and therefore, hold the trial court did
not abuse its discretion in denying the motion to dismiss. Dragoo, 96 S.W.3d at 316. Esquivel's first
issue is overruled.


II. Legal and Factual Insufficiency 

 Esquivel further contends that the record cannot support a conviction for Indecency with a
Child by Exposure because the evidence is legally and factually insufficient to show that Esquivel
1) acted with intent to arouse or gratify the sexual desires of any person and 2) knew M.O. was
present. 

Standard of Review


 In a legal sufficiency review, we consider all of the evidence in the light most favorable to
the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a
rational jury could have found the accused guilty of the essential elements of the offense beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Swearingen v. State, 101 S.W.3d
89, 97 (Tex. Crim. App. 2003) (en banc).

 In a factual sufficiency review, we view the evidence in a neutral light and ask whether a jury
was rationally justified in finding guilt beyond a reasonable doubt. See Watson v. State, 204 S.W.3d
404, 414-17 (Tex. Crim. App. 2006). We then determine whether the evidence supporting the verdict
is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against
the great weight and preponderance of the conflicting evidence. Id. at 415. We will not reverse a case
on a factual sufficiency challenge unless we can say, with some objective basis in the record, that
the great weight and preponderance of the evidence contradicts the jury's verdict. Id. at 417.

 Under both legal and factual sufficiency standards, the fact-finder is the exclusive judge of
the witnesses' credibility and the weight to be given to their testimony. See Swearingen, 101 S.W.3d
at 97; Cain v. State, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997). The jury is in the best position
to evaluate the credibility of the witnesses, and our factual-sufficiency jurisprudence still requires
an appellate court to afford "due deference" to the jury's determinations. Marshall v. State, 210
S.W.3d 618, 625 (Tex. Crim. App. 2006).

 Texas Penal Code Ann. § 21.11


 A person commits the offense of Indecency with a Child by Exposure if, "with a child
younger than 17 years and not the person's spouse, whether the child is of the same or opposite sex,
the person . . . with intent to arouse or gratify the sexual desires of any person . . . exposes the
person's anus or any part of the person's genitals, knowing the child is present." Tex. Penal Code
Ann. § 21.11 (Vernon 2003). 

 Intent is a question of fact and may be inferred from the acts, words, and conduct of the
accused. Barcenes v. State, 940 S.W.2d 739, 744 (Tex. App.--San Antonio 1997, pet. ref'd) (citing
Robles v. State, 664 S.W.2d 91, 94 (Tex. Crim. App. 1984)). Under § 21.11(a), "the requisite specific
intent to arouse or gratify the sexual desire of any person can be inferred from the defendant's
conduct, his remarks and all surrounding circumstances." McKenzie v. State, 617 S.W.2d 211, 216
(Tex. Crim. App. 1981) (citing Bowles v. State, 550 S.W.2d 84, 85-86 (Tex. Crim. App. 1977));
Turner v. State, 600 S.W.2d 927, 929 (Tex. Crim. App. 1980); see Lewis v. State, 676 S.W.2d 136,
139 (Tex. Crim. App. 1984) ("The intent element in this case can only be proved by inferences from
the evidence presented."); Gregory v. State, 56 S.W.3d 164, 171-72 (Tex. App.--Houston [14th
Dist.] 2001, pet. dism'd). No oral expression of intent is necessary, nor is visible evidence of sexual
arousal required. McKenzie, 617 S.W.2d at 216; Gregory, 56 S.W.3d at 172.




Discussion


A. Evidence of Intent

 We turn first to Esquivel's argument that the evidence is legally and factually insufficient to
sustain a conviction for Indecency with a Child by Exposure because the State did not prove the
required element of intent to arouse or gratify any person's sexual desire. See Tex. Penal Code Ann.
§ 21.11. Esquivel argues that because the jury did not convict him of Sexual Assault of a Child, it
rejected M.O.'s testimony that he touched her anus. Therefore, Esquivel argues, the jury should not
have convicted him of the offense of Indecency with a Child by Exposure because the record is
devoid of any evidence from which the jury could have inferred that he intended to arouse and gratify
his sexual desires.

 Nevertheless, the record reflects that on the night in question, Esquivel was out drinking,
presumably clothed. He returned to the apartment, went into the mother's bedroom, left the bedroom
to go to the restroom and, at some point, either before or after going to the restroom, removed all of
his clothing. Esquivel then entered M.O.'s bedroom completely naked, got into M.O.'s bed and,
according to M.O., touched and penetrated her anus with either his finger or his penis. And although
M.O.'s mother testified that Esquivel's response, upon being asked what he was doing in M.O.'s
room, was "well, isn't this our room?" there was also testimony that the lighting in M.O.'s bedroom
was sufficient to permit one to see up to at least an arm's length, that M.O. was heavy and had long
black hair while her mother was thin and had short blond hair, and that Esquivel had been living at
the two-bedroom apartment for at least three months and was familiar with its layout. Further, M.O.
testified that upon being touched by Esquivel on her anus, she jumped out of her bed and ran out of
the room, calling for her mother. She also stated she heard Esquivel call her "baby" and ask her to
come back. Additionally, M.O. testified that on a prior occasion, Esquivel told her he did not want
young girls around because it might get him in trouble.

 Viewing the evidence in the light most favorable to the verdict, we conclude that the jury
could have found beyond a reasonable doubt that Esquivel deliberately entered M.O.'s bedroom
naked, got into bed with her, and touched her anus, thereby having the requisite intent to arouse or
gratify. See Jackson, 443 U.S. at 319; see also Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App.
2000). And while the jury, in refusing to convict Esquivel of Sexual Assault of a Child, apparently
rejected M.O.'s testimony that Esquivel penetrated her anus, the jury remained free to accept the rest
of her testimony, and find that Esquivel had the requisite intent. Cain, 958 S.W.2d at 408-09. This
specific intent could have been inferred from Esquivel's acts, words, and conduct; therefore, we
conclude the evidence was legally sufficient to establish Esquivel had the requisite intent. See
Barcenes, 940 S.W.2d at 744. 

 Esquivel further maintains that the evidence is factually insufficient, focusing on the following
evidence: (1) Esquivel's response, "well, isn't this our room?" upon being asked what he was doing
in M.O.'s bedroom; (2) Ozuna's testimony that she believed Esquivel had gone into the wrong room
after coming out of the bathroom; and (3) M.O.'s testimony that it was dark in her bedroom and she
was not aware of Esquivel's presence until he was in her bed.

 However, although Esquivel claimed he thought he was in Ozuna's bedroom, there was
evidence of the following: (1) that Esquivel had lived in the two-bedroom apartment for several
months; (2) that earlier that night, Esquivel had walked down the hallway and into Ozuna's bedroom,
and then to the bathroom, without any reported difficulties; (3) that there was sufficient light in
M.O.'s bedroom to see up to a distance of an arm's length; (4) that M.O. was heavy and had long
black hair while her mother was thin and had short blond hair; and (5) that Esquivel had previously
remarked that having young girls around would get him into trouble. 

 Viewing all the evidence neutrally, the State's evidence is neither so obviously weak nor so
greatly outweighed by contrary proof as to undermine confidence of the jury's determination. 
Watson, 204 S.W.3d at 414-15. We, therefore, conclude that the evidence was factually sufficient to
establish that Esquivel had the necessary intent to arouse or gratify. Esquivel's second issue is
overruled.

B. Evidence Esquivel knew M.O. was present.

 Next, Esquivel maintains that the evidence is legally and factually insufficient to sustain a
conviction for Indecency with a Child by Exposure because the State did not prove that Esquivel
knew M.O. was present. See Tex. Penal Code Ann. § 21.11. 

 Nevertheless, in viewing the evidence in the light most favorable to the verdict, we conclude
that the jury could have found beyond a reasonable doubt that Esquivel acted while knowing M.O.
was present. See Jackson, 443 U.S. at 319; see also Johnson, 23 S.W.3d at 7. The jury could have
found that Esquivel, who had been living at the two-bedroom apartment for several months with both
M.O. and her mother, experienced no difficulty initially in finding Ozuna's bedroom and then the
bathroom; that he deliberately entered M.O.'s bedroom; that the lighting was such that Esquivel was
able to see M.O.'s long black hair when he was in bed beside her; and, that based on a prior statement
he made regarding young girls getting him in trouble, he was, in fact, calling M.O. when he said,
"baby" and "come back". From this evidence, a rational jury could have inferred that Esquivel was
aware of M.O.'s presence at the time that he exposed his genitals; thus, the evidence was legally
sufficient to establish that Esquivel knew M.O. was present. See Turner, 600 S.W.2d at 929
(knowledge that a child is present can be inferred from the surrounding circumstances). 

 Additionally, Esquivel argues the evidence is factually insufficient, focusing on evidence that
(1) he mistakenly entered M.O.'s bedroom where it was dark and he was unable to see; and (2) he
didn't call M.O. by name and could have been calling M.O.'s mother when he said, "baby" and "come
back". (3) However, although Esquivel stated he thought he was in Ozuna's bedroom and there was
evidence that the two bedrooms were side by side, the jury could have disregarded this evidence in
view of evidence that Esquivel was familiar with the apartment's layout; there was sufficient lighting
in M.O.'s bedroom; and, Esquivel had previously expressed an illicit attraction for young girls. Cain,
958 S.W.2d 404, 408-09. 

 Viewing all the evidence neutrally, the State's evidence that Esquivel knew M.O. was present
is neither so obviously weak nor so greatly outweighed by contrary proof as to undermine confidence
in the jury's determination. Watson, 204 S.W.3d at 414-15. Therefore, we conclude that the evidence
was factually sufficient to establish that Esquivel acted while knowing M.O. was present. Esquivel's
third issue is overruled.

III. Voluntary Intoxication 

 In Esquivel's final issue, he contends the trial court's instruction to the jury on voluntary
intoxication was an improper comment on the weight of the evidence because "voluntary intoxication
was relevant to the issue of whether Esquivel knew [M.O.] was present." Specifically, Esquivel
maintains that "[b]y including an instruction in the charge to the jury that voluntary intoxication 'does
not constitute a defense to the commission of a crime,' the trial court in fact instructed the jury to
disregard the evidence concerning Esquivel's knowledge of [M.O.'s] presence."

Standard of Review


 Appellate review of alleged error in a jury charge involves a two-step process. Abdnor v. State,
871 S.W.2d 726, 731 (Tex. Crim. App. 1994). Initially, we determine whether error occurred. If so,
we then evaluate whether sufficient harm resulted from the error to require reversal. Id. at 731-32.

A trial court must charge the jury fully and affirmatively on the law applicable to every issue raised
by the evidence. See, e.g., Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon 2007) (jury charge of
trial judge shall "distinctly set[ ] forth the law applicable to the case"); Taylor v. State, 885 S.W.2d
154, 157 (Tex. Crim. App. 1994). 

Discussion

 In the present case, the jury was instructed as follows:

 You are instructed that voluntary intoxication does not constitute a defense to
the commission of a crime, if, in fact, a crime was committed.

 'Intoxication' means disturbance of mental or physical capacity resulting from
the introduction of any substance into the body. 


 Esquivel argues that since there was evidence regarding his intoxicated state, the jury should
not have been given this instruction because it was up to the jury to decide whether Esquivel's
preception was distorted, he was confused, or he knew the vcitim was present. We disagree.

 In essence, Esquivel seeks to rely on the "defense" that he was too drunk to know what he was
doing and therefore, should not be held responsible for his actions. This argument is precisely why
section 8.04 of the Texas Penal Code and its predecessor were enacted. See Taylor, 885 S.W.2d at
156 (citing Evers v. State, 31 Tex. Crim. 318, 20 S.W. 744, 746-47 (1892) ("discussing history of case
law on issue of intoxication as excuse to committing crime")). Section 8.04 of the Texas Penal Code
specifically provides that "[v]oluntary intoxication does not constitute a defense to the commission
of crime." Tex. Penal Code Ann. § 8.04 (a) (Vernon 2003) (emphasis added). 

 In this case, there was sufficient evidence of intoxication to warrant the voluntary intoxication 
instruction. Although Esquivel did not testify or present witnesses, witnesses for the State testified that
Esquivel had been drinking and was likely intoxicated. When evidence of intoxication is presented that
might have led the jury to conclude that appellant was intoxicated at the time of the offense and this
might have contributed to his defense of lack of knowledge of the offense, it is proper for the trial court
to instruct the jury on the appropriate law. Taylor, 885 S.W.2d at 158; Huerta v. State, 933 S.W.2d
648, 650 (Tex. App.--San Antonio1996, no pet.). Accordingly, Esquivel's fourth and final issue is
overruled. 


 Conclusion


 Finding no error, we affirm the trial court's judgment.


 Karen Angelini, Justice

Do Not Publish


1. Sitting by special assignment.
2. The State argued in response that given Esquivel's "extensive criminal record, it could be rationally concluded
that [Esquivel] had learned to tolerate, if not come to enjoy, his numerous periods of incarceration prior to the events
that led to his conviction in this matter." This argument is not only inappropriate, but totally unsupported by the record. 
3. We address Esquivel's argument that his intoxication deprived him of the ability to satisfy the elements of this
offense in the final issue.