NUMBER 13-05-769-CR 



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


CORY ESTRADA SIERRA, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 36th District Court 

of San Patricio County, Texas

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Benavides and Vela


Memorandum Opinion by Justice Vela

 A jury convicted appellant, Cory Estrada Sierra, of three counts of aggravated
sexual assault of a child and assessed punishment at life in prison, plus a $10,000 fine
for each count. Appellant raises five issues for our consideration. We affirm.


I. Background


Ten-year-old A.Y. lived with her mother, stepfather (appellant), and another
child, C.S. At trial, A.Y. testified that appellant "[T]ouched me in my private part." 
When the prosecutor asked her, "[D]id he touch you on the outside of your private part
or on the inside of your private part?", she said, "He touched me on the outside." 
When the prosecutor asked, "And where is the outside?", she replied, "Where I go tee-tee." She stated he touched her with "His fingers mostly" and that this happened "A
few times." She also testified he twice made her "stick his thingy in my mouth." By
"thingy," she meant his "middle part." She said that on one occasion, he "made [C.S.]
put his [C.S.'s] middle part in my middle part."

In October 2004, A.Y.'s mother tested positive for HIV. She testified that when
appellant found out she had HIV, he accused her of getting it from her ex-husband. 
Soon after she tested positive for HIV, appellant and A.Y. tested positive for HIV. 
After A.Y.'s mother learned her daughter had HIV, she asked A.Y. if anyone had
touched her underneath her bathing suit. A.Y. denied being touched. Despite the
denial, A.Y.'s mother confronted appellant about whether he had touched A.Y. A.Y.'s
mother testified that, "He said it only happened a few times" and that he had "touched
[A.Y.] four or five times" "[w]ith his fingers." 

Carol McLaughlin, a sexual assault nurse examiner, examined A.Y. and found
no genital trauma. She testified what A.Y. told her as follows:

 "'My dad [appellant], he's been touching me. Sorry I lied. 
I didn't want to tell. He said he would go to jail. I didn't
want him to. All in my private," and she indicated her
female sexual organ by pointing. "He stuck his private
inside mine. He made me put my mouth on his privates. .
. ."


McLaughlin stated that females urinate through the urethra, which is located
inside the female sexual organ. She also testified that although she did not find any
physical evidence of penetration in A.Y., it is common not to find injuries to the
genitalia even when penetration has occurred.

Appellant testified that the allegations against him were false and that he had
no inappropriate contact with A.Y. He stated that after A.Y.'s mother tested positive
for HIV, he wanted to have A.Y. tested for HIV. He claimed A.Y.'s mother resisted
having her tested. He denied infecting A.Y. with HIV.

II. Sufficiency of the Evidence

By issues one and two, appellant challenges the legal and factual sufficiency of
the evidence to support his conviction on Count 1, which charged him with aggravated
sexual assault by penetrating A.Y.'s sexual organ with his finger. He contends the
evidence supporting his conviction is insufficient to prove he penetrated A.Y.'s sexual
organ.

In deciding whether evidence is legally sufficient, "'the relevant question is
whether, after viewing the evidence in the light most favorable to the prosecution, any
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt.'" Hampton v. State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005)
(quoting Griffin v. State, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981)) (quoting and
adopting the due-process standard of Jackson v. Virginia, 443 U.S. 307, 319 (1979)). 
This standard gives full play to the trier of fact's responsibility to resolve conflicts in
the testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts. Jackson, 443 U.S. at 319. We must evaluate all evidence in
the record, both direct and circumstantial; however, we do not reweigh the evidence
or substitute our judgment for the fact-finder's. Mosely v. State, 141 S.W.3d 816,
821 (Tex. App.-Texarkana 2004, pet. ref'd). 

When reviewing the factual sufficiency of the evidence, we view all the
evidence in a neutral light, favoring neither party. Watson v. State, 204 S.W.3d 404,
414 (Tex. Crim. App. 2006); Drichas v. State, 175 S.W.3d 795, 799 (Tex. Crim. App.
2005). We will set the verdict aside only if: (1) the evidence supporting the
conviction, although legally sufficient, is nevertheless so weak that the fact-finder's
determination is clearly wrong and manifestly unjust; or (2) the verdict is against the
great weight and preponderance of the evidence. Watson, 204 S.W.3d at 414-15,
417; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). We cannot
conclude a conviction is "clearly wrong" or "manifestly unjust" simply because we
would have voted to acquit. Watson, 204 S.W.3d at 417. In other words, we may
not simply substitute our judgment for the fact-finder's judgment. Johnson, 23
S.W.3d at 12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). To
reverse for factual sufficiency, we must determine, with some objective basis in the
record, that the great weight and preponderance of the evidence contradicts the
verdict. Watson, 204 S.W.3d at 417. In examining a factual sufficiency challenge,
we defer to the fact-finder's determination of the credibility of the evidence. 
Swearingen v. State, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003).

A person commits the offense of aggravated sexual assault of a child if the
person intentionally or knowingly causes the penetration of the anus or sexual organ
of a child by any means or causes the sexual organ of a child to contact or penetrate
the mouth, anus, or sexual organ of another person, including the actor, and the child
is younger than fourteen years of age. Tex. Pen. Code Ann. § 22.021(a)(1)(B)(iii),
(2)(B) (Vernon Supp. 2006). The testimony from a child victim by itself is sufficient
to support a conviction of aggravated sexual assault. Ozuna v. State, 199 S.W.3d
601, 606 (Tex. App.-Corpus Christi 2006, no pet.) (citing O'Hana v. State, 837
S.W.2d 139, 141-42 (Tex. App.-Austin 1992, pet. ref'd)), and a victim does not have
to testify to the penetration. Murphy v. State, 4 S.W.3d 926, 929 (Tex. App.-Waco
1999, pet. ref'd). Evidence of the slightest penetration is sufficient to support a
conviction, as long as it has been shown beyond a reasonable doubt. Id. 

In Vernon v. State, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992), the court
stated what constitutes penetration for an aggravated sexual assault offense: "Mere
contact with the outside of an object does not amount to a penetration of it. But
pushing aside and reaching beneath a natural fold of skin into an area of the body not
usually exposed to view, even in nakedness, is a significant intrusion beyond mere
external contact." Id. The Vernon court concluded that a reasonable fact-finder could
have found that the defendant's fingers penetrated the victim's sexual organ if they
went beyond the outer layer of skin comprising the external genitalia or labia. Id. 

Appellant asserts that when A.Y. was asked whether she was touched on the
inside or outside, she answered "outside." He argues that this proves there was no
penetration of A.Y.'s sexual organ. However, a child may not have the technical
knowledge to accurately describe parts of her body. In re A.B., 162 S.W.3d 598, 601
(Tex. App.-El Paso 2005, no pet.). We note that A.Y. testified that appellant
"[T]ouched me in my private part." (emphasis added). Furthermore, McLaughlin
testified that A.Y. told her "'My dad [appellant], he's been touching me. . . . All in my
private," and she indicated her female sexual organ by pointing." (emphasis added). 
The court of criminal appeals has stated that the victim's use of "in" would be enough
evidence to establish penetration. Peacock v. State, 819 S.W.2d 233, 236 (Tex.
Crim. App. 1991).

Thus, a rational jury could have determined the following: (1) based upon
A.Y.'s testimony, appellant touched her with his fingers "in" her private area, where
she went "tee-tee;" (2) Carol McLaughlin testified A.Y. told her that appellant had
"been touching [her]. . . . All in [her] private;" (3) McLaughlin also testified that
females urinate from the urethra, which is located inside the female sexual organ; (4)
appellant admitted to A.Y.'s mother that he had touched A.Y.; (5) it is common not
to find physical evidence of penetration, and this result does not mean that A.Y. was
not penetrated; and (6) A.Y. was under fourteen years of age when appellant touched
her.

Appellant's controverting evidence showed: (1) A.Y. testified he touched her
on the outside; (2) he testified he did not touch A.Y. and that the allegations against
him were false; (3) he denied giving A.Y. HIV; (4) A.Y.'s mother resisted his desire to
test A.Y. for HIV; (5) there is no physical evidence showing penetration of A.Y.'s
sexual organ; and (6) in her testimony, A.Y. did not mention "urethra." 

After viewing the evidence in a neutral light, we conclude that the evidence is
not so obviously weak or so greatly outweighed by contrary proof, that it would not
support the finding of guilty beyond a reasonable doubt on Count 1. See Watson, 204
S.W.3d at 414-17; Murphy, 4 S.W.3d at 930 (lack of physical evidence of penetration
does not render evidence factually insufficient when treating-physician testified that
her examination could neither establish nor preclude possibility that victim's sexual
organ was penetrated); Dixon v. State, 886 S.W.2d 852, 856 (Tex. App.-Beaumont
1994, pet. ref'd) (touching or penetration between labia sufficient to satisfy and
sustain indictment alleging penetration of the female sexual organ). Viewing the
evidence in the light most favorable to the verdict, we also conclude that a rational
trier of fact could have found the essential elements of the offense in Count 1 beyond
a reasonable doubt. See Jackson, 443 U.S. at 319. Accordingly, issues one and two
are overruled.

III. Speedy Trial


By issue three, appellant argues he was denied the right to a speedy trial. See
U.S. Const. amend. VI; (1) Tex. Const. art. 1, § 10. (2)
 The court of criminal appeals has
analyzed speedy-trial claims employing the factors announced in Barker v. Wingo, 407
U.S. 514, 515 (1972). See also Shaw v. State, 117 S.W.3d 883, 888 (Tex. Crim.
App. 2003); Zamorano v. State, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). The
relevant factors to be weighed include, but are not necessarily limited to (1) length of
the delay, (2) reasons for the delay, (3) the accused's assertion of the speedy-trial
right, and (4) any prejudice to the accused caused by the delay. Barker, 407 U.S. at
530; Shaw, 117 S.W.3d at 888-89.

1. Length of the Delay

We measure the length of the delay from the defendant's arrest or formal
accusal to the time trial begins. United States v. Marion, 404 U.S. 307, 313 (1971);
Marquez v. State, 165 S.W.3d 741, 748 (Tex. App.-San Antonio 2005, pet ref'd). 
Texas courts generally consider a delay of eight months or longer as "presumptively
prejudicial," which triggers an analysis of the remaining three Barker factors. Marquez,
165 S.W.3d at 748. The length of delay requiring a speedy-trial analysis also depends
on the circumstances of each case. Barker, 407 U.S. at 530-31; See e.g. Zamorano,
84 S.W.3d at 648-49 (stating United States Supreme Court noted delay tolerated for
ordinary street crime is considerably less than for serious, complex conspiracy charge). 
If the accused shows that the time from accusation to trial "has crossed the threshold
dividing 'ordinary' from 'presumptively prejudicial' delay, the court must then consider
the extent to which the delay stretches beyond the bare minimum needed to trigger
judicial examination of the claim." Zamorano, 84 S.W.3d at 649. The longer a
triggering delay, the more prejudicial that delay is to the defendant. Id. Here, because
appellant was arrested on December 29, 2004 and went to trial on December 6,
2005, the delay is sufficient to trigger a speedy-trial analysis. See Dragoo v. State,
96 S.W.3d 308, 314 (Tex. Crim. App. 2003) ("In general, courts deem delay
approaching one year to be 'unreasonable enough to trigger the Barker inquiry.'")
(quoting Doggett v. United States, 505 U.S. 647, 652 (1992)). 

2. Reasons for the Delay

The second Barker factor balances the reasons for the delay. Barker, 407 U.S.
at 530. After determining the delay was presumptively prejudicial, the State has the
initial burden to justify the delay. Marquez, 165 S.W.3d at 748. A valid reason for
the delay should not be weighed against the State. State v. Munoz, 991 S.W.2d 818,
822 (Tex. Crim. App. 1999).

Appellant claims the delay was caused by the trial court granting the State's
motion for continuance requesting additional time to obtain DNA results, which the
State did not use at trial. On March 21, 2005, the State filed an "AGREED STATE'S
MOTION FOR CONTINUANCE," in which the State requested a continuance because
the "State and Defense Attorney are waiting on DNA results to be sent from the DPS
Lab." Appellant, along with his attorney and the State's attorney, signed the motion. 
That same day, the trial court granted the motion. Because appellant agreed to the
motion, he contributed to the delay.

Appellant further contributed to the delay for two other reasons: First, on June
8, 2005, he requested a new court-appointed attorney whom the trial court appointed
on July 1, 2005. Second, on September 27, 2005, appellant filed a motion requesting
the services of an expert witness. Three days later, he filed a motion for continuance
in order to obtain the services of the expert. (3) When the accused's conduct, in whole
or in part, contributes to the delay, these actions may constitute a waiver of a speedy-trial claim. Munoz, 991 S.W.2d at 822. The record does not show that the State
deliberately tried to delay the trial. Therefore, we will not weigh the second factor
against the State. See Marquez, 165 S.W.3d at 748-49; Zamorano, 84 S.W.3d at
649; Dragoo, 96 S.W.3d at 314.

3. Assertion of the Speedy-Trial Right

The third factor is the assertion of the right to speedy trial. Marquez, 165
S.W.3d at 749. On June 15, 2005, appellant filed a motion for speedy trial, asserting
that the DNA results would not be returned before his trial, which was set for August
1, 2005. He claimed prejudice would result if trial was not held as scheduled. The
State argues he waived the right to a speedy trial by (1) agreeing to the State's motion
for continuance, which was filed on March 21, 2005, (2) on June 8, 2005, he
requested a new lawyer, and (3) on September 30, 2005, he filed a motion for
continuance. Whether and how a defendant asserts the right to speedy trial closely
relates to the other Barker factors because the strength of the defendant's efforts will
be shaped by them. State v. Jones, 168 S.W.3d 339, 348 (Tex. App.-Dallas 2005,
no pet.) (citing Zamorano, 84 S.W.3d at 651; Barker, 407 U.S. at 531). When a
defendant asserts his speedy-trial right, the assertion is entitled to strong evidentiary
weight when determining whether the defendant is being deprived of the right. Id.

Here, the record reflects that appellant filed a motion for speedy trial; however,
it does not show that he asserted this right by requesting a hearing to present
evidence on his motion. See Cook v. State, 741 S.W.2d 928, 940 (Tex. Crim. App.
1987). Further, as previously stated, he caused part of the delay. Thus, the third
factor weighs in the State's favor.

4. Prejudice to the Defendant

The final Barker factor is the prejudice to the defendant resulting from the delay. 
 Barker, 407 U.S. at 532. Appellant argues he suffered a lengthy and oppressive pre-trial incarceration, which was not caused by his actions. Instead, he claims his trial
counsel and the prosecutor caused the delay. Prejudice to the defendant is assessed
in light of the interests protected by the right to a speedy trial: (1) preventing
oppressive pretrial incarceration; (2) minimizing the defendant's anxiety and concern;
and (3) limiting the possibility that the defendant will be impaired. Marquez, 165
S.W.3d at 749 (citing Munoz, 991 S.W.2d at 826). Protecting a defendant's ability
to adequately prepare his defense is considered the most important interest. Id. The
defendant only has the burden to make "some" showing of prejudice, and not "actual"
prejudice. Marquez, 165 S.W.3d at 749 (citing Barker, 407 U.S. at 532-33). After
a defendant makes this showing, the burden shifts to the State to show that the
defendant suffered "no serious prejudice beyond that which ensued from the ordinary
and inevitable delay." Marquez, 165 S.W.3d at 749 (citing Barker, 407 U.S. at 532-33 (quoting Ex parte McKenzie, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973)).

With regard to the second interest, we hold that appellant was not prejudiced. 
He did not offer any evidence showing that the delay caused him any unusual anxiety
beyond the level normally associated with being charged with a felony sex crime. See
Shaw, 117 S.W.3d at 890. With respect to the first interest, he argues he was
subjected to oppressive pretrial incarceration. "In determining if the pretrial
incarceration was oppressive, the dispositive consideration is the effect the
incarceration has upon the defendant." Webb v. State, 36 S.W.3d 164, 174 (Tex.
App.-Houston [14th Dist.] 2000, pet. ref'd) (quoting Munoz, 991 S.W.2d at 828). 
Appellant, however, has failed to show how his pretrial incarceration was oppressive
of his rights in light that he partly caused the delay. Finally, regarding the third
interest, we presume that there is some prejudice to the defendant's ability to defend
himself, but this presumption is extenuated by the defendant's acquiescence to the
delay by agreeing to the State's motion for continuance. See Shaw, 117 S.W.3d at
890 (quoting Doggett v. United States, 505 U.S. 647, 655 (1992)). The record
shows that appellant: (1) did not object to the State's motion for continuance; (2) did
not request a hearing on his motion for speedy trial; (3) did not make additional
requests for a speedy trial; and (4) later filed a motion for continuance, thereby
extending his incarceration time. In sum, he failed to show prejudice and, therefore,
this factor weighs in the State's favor.

Balancing the Barker Factors

After analyzing the Barker factors, we must balance them. The length of delay
weighs in appellant's favor and requires us to analyze the remaining factors. The three
remaining factors weigh in the State's favor: (1) there were valid reasons for the
delay; (2) although appellant filed a motion for speedy trial, he did nothing further to
demand his right and indirectly waived the right by his partial responsibility in causing
the delay; and (3) he failed to meet his burden of establishing a prima facie case of
prejudice. Therefore, we overrule issue three.

IV. State's Withdrawal of Subpoenas


By issue four, appellant asserts the trial court erred by allowing the State to
withdraw its subpoenas (4) for the medical records of A.Y. and C.S. He claims that
because A.Y.'s mother and Dr. Doran (the doctor who treated A.Y. for HIV) testified
that A.Y. had contracted HIV from appellant's conduct, he needed the children's
medical records to rebut their testimony. Thus, he contends the records contained
exculpatory evidence, which the State failed to disclose. There is no indication in the
record that the prosecution had possession of the children's medical records.

The record does not show that appellant subpoenaed the children's medical
records. However, on July 13, 2005, appellant filed a Motion for Court Ordered
Release of Confidential Documents in which he sought "documents in the care,
custody, and control of the Child Protective Services. . . ." Specifically, he stated: 

 The prosecution has had delivered to its office portions of
the files containing information regarding the investigation
of these allegations. There are other documents, notes,
memoranda and tapes which were not delivered to the
office of the District Attorney. Counsel for the accused has
been advised that CPS must have a court order to be able
to allow defense counsel to view these documents, notes
memoranda, and tapes. Pursuant to Sec. 261.201 of the
Texas Family Code, Defendant requests the Court to Order
the disclosure of all child protective service documents,
photographs, audio or video recordings, notes, memoranda
or other writings of any nature relating to: [A.Y. and C.S.]


On September 30, 2005, the trial court signed an order, requiring the State to
produce "[a]ll . . . physical evidence . . . material to any matter involved in this case which
are in the possession, custody or control of the state or any of its agencies." 

Appellant complains the State violated the doctrine of Brady, which mandates that
the State is required to provide potentially exculpatory information to the defense. Brady
v. Maryland, 373 U.S. 83, 87 (1963); see also Thomas v. State, 841 S.W.2d 399 (Tex.
Crim. App. 1992). The Due Process Clause of the Fourteenth Amendment to the United
States Constitution is violated when a prosecutor fails to disclose evidence which is
favorable to the accused and that creates a probability sufficient to undermine the
confidence in the outcome of the proceeding. Id. at 404. Further, the information must be
disclosed to the accused in time to put it to effective use at trial. See Palmer v. State, 902
S.W.2d 561, 563 (Tex. App.-Houston [1st Dist.] 1995, no pet.). This includes disclosure
of any favorable information in the possession of police agencies or other parts of the
"prosecutorial team." Ex parte Mitchell, 977 S.W.2d 575, 578 (Tex. Crim. App. 1998)
(citing Kyles v. Whitley, 514 U.S. 419 (1995)). A reasonable probability of a different result
is shown when the government's evidentiary suppression undermines confidence in the
outcome of the trial. Kyles, 514 U.S. at 435.

"The mere possibility that an item of undisclosed information might have helped the
defense, or might have affected the outcome of the trial, does not establish 'materiality' in
the constitutional sense." Hampton v. State, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002)
(quoting United States v. Agurs, 427 U.S. 97, 109-10 (1976)). Rather, the inquiry is
whether the failure of the evidence's disclosure undermines confidence in the jury's verdict. 
Lempar v. State, 191 S.W.3d 230, 241 (Tex. App.-San Antonio 2005, pet. ref'd) (citing Ex
parte Richardson, 70 S.W.3d 865, 870 n.22 (Tex. Crim. App. 2002)).

Here, neither A.Y.'s mother nor Dr. Doran testified that A.Y. contracted HIV
from appellant. In fact, A.Y.'s mother testified that when appellant accused her of
getting HIV from her ex-husband, she told appellant, "[M]aybe it was possible." Thus,
the medical records were not favorable to appellant because the information which
appellant claims the records contained was not needed to rebut the testimony of Dr.
Doran and A.Y.'s mother. Accordingly, the State's decision to withdraw its subpoenas
for the records did not constitute a failure to disclose evidence favorable and material
to appellant's guilt or punishment. Further, there has been no showing of any evidence
that was withheld. Brady does not impose a duty on the State to provide facts known to
or discoverable by the defendant. See Havard v. State, 800 S.W.2d 195, 204-05 (Tex.
Crim. App. 1989). The State has no duty to seek out exculpatory information
independently on the defendant's behalf. Palmer v. State, 902 S.W.2d 561, 563 (Tex.
App.-Houston [1st Dist.] 1995, no writ) ("purpose [of Brady rule] is not to displace the
adversary system") (quoting United States v. Bagley, 473 U.S. 667, 675 (1985)). 
Moreover, a Brady violation does not arise if the defendant, using reasonable diligence,
could have obtained the information. Westley v. Johnson, 83 F.3d 714, 726 (5th Cir.
1996). Issue four is overruled.

V. Ineffective Assistance of Trial Counsel


By issue five, appellant complains of ineffective assistance of trial counsel. To
establish this claim, a defendant must satisfy the two-pronged test announced in
Strickland v. Washington, 466 U.S. 686, 687-88, 694 (1984). A defendant must
show that (1) counsel's representation fell below an objective standard of
reasonableness, and (2) there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have been different. Id. "A
reasonable probability is a probability sufficient to undermine confidence in the
outcome." Id. at 694. To determine whether the test has been satisfied on appeal,
we will judge the totality of counsel's representation and not focus on isolated acts or
omissions. Id. at 690. Further, in a claim of ineffective assistance of counsel, the
defendant must overcome the strong presumption of reasonable professional
assistance. Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005).

The defendant must prove ineffective assistance of counsel by a preponderance
of the evidence. Munoz v. State, 24 S.W.3d 427, 434 (Tex. App.-Corpus Christi
2000, no pet.). The court in Salinas stated, "to overcome the presumption of
reasonable professional assistance, 'any allegation of ineffectiveness must be firmly
founded in the record, and the record must affirmatively demonstrate the alleged
ineffectiveness.'" Salinas, 163 S.W.3d at 740 (quoting Thompson v. State, 9 S.W.3d
at 813 (citing McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996))). 
In most cases when the record does not provide explanations for counsel's actions,
a silent record will not overcome the presumption. Mallet v. State, 65 S.W.3d 59, 63
(Tex. Crim. App. 2001). 

1. Impeachment Evidence and Failure to Object to State's Motion to Withdraw 
 its Subpoenas for Medical Records of A.Y. and C.S.


Appellant argues trial counsel was ineffective because he did not request a
transcript be made of the testimony of his ex-wife, whom he claims testified at his pre-trial bond hearing. He asserts that trial counsel could have used this testimony to
impeach her during cross-examination at the guilt stage. He also argues trial counsel
was ineffective because he failed to offer into evidence records from Child Protective
Services which he could have used to impeach the State's crucial witnesses. Finally,
he argues trial counsel was ineffective for failing to object to the State's motion to
withdraw its subpoenas for the medical records of A.Y. and C.S.

Appellate review of trial counsel's representation is highly deferential and
presumes counsel's actions fell within the wide range of reasonable and professional
assistance. Garza v. State, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007). If
counsel's reasons for his conduct do not appear in the record, and there is at least the
possibility his conduct could have been grounded in legitimate trial strategy, we will
defer to counsel's decisions and deny relief on an ineffective-assistance claim on direct
appeal. Id. Here, counsel's reasons for his actions or intentions do not appear in the
record, and his conduct could have been part of a reasonable trial strategy. Without
more, we must defer to counsel's decisions and deny relief. 


2. Failure to Make Opening Statement

Appellant argues trial counsel was ineffective because she failed to make an
opening statement. However, the failure to give an opening statement may be a
tactical decision that is part of a plausible trial strategy. See Taylor v. State, 947
S.W.2d 698, 704 (Tex. App.-Fort Worth 1997, pet ref'd) (stating that choosing not
to make opening statement is "inherently tactical" decision); Standerford v. State, 928
S.W.2d 688, 697 (Tex. App.-Fort Worth 1996, no pet.) (holding that failure to make
opening statement did not support ineffective assistance claim because statement
"would have given the State a preview of the defense's strategy" and "[c]ounsel
clearly made a tactical decision"). Accordingly, we hold, based on the limited record
before us, that appellant's trial counsel's failure to make an opening statement does
not support a claim of ineffective assistance. Issue five is overruled. The trial court's
judgment is affirmed. 

 ROSE VELA

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and 

filed this 9th day of August, 2007.
1. The Sixth Amendment provides, in relevant part: "In all criminal prosecutions, the accused shall
enjoy the right to a speedy . . . trial."
2. Article 1, section 10 provides, in relevant part: "In all criminal prosecutions the accused shall
have a speedy . . . trial."


3. In his motion for continuance, appellant stated that the case was set for a jury trial on October
3, 2005.
4. The State issued subpoenas to two employees at the Nueces County Health Department, which
requested production of the records. After the employees objected to the subpoenas, the trial court
allowed the State to withdraw the subpoenas.