In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-06-265 CR


____________________



JOHN HENRY BOYKIN, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 252nd District Court


Jefferson County, Texas


Trial Cause No. 94129






 MEMORANDUM OPINION 


 John Henry Boykin appeals his sexual assault conviction. See Tex. Pen. Code Ann.
§ 22.011(a)(1)(A) (Vernon Supp. 2006). (1) In four appellate issues, Boykin asserts that the
State withheld exculpatory evidence from him, the trial court erred by denying his motion for
new trial, the trial court violated his right to a speedy trial, and the evidence is legally and
factually insufficient to support his conviction. We overrule his four issues and affirm the
judgment of the trial court.

BACKGROUND

 Boykin was arrested on November 17, 2004, for the sexual assault of his former
girlfriend. On February 10, 2005, a grand jury indicted him for the offense. During pre-trial
proceedings, acting pro se, Boykin filed several motions asserting his right to a speedy trial
and requesting discovery of the State's evidence. He also wrote letters that were forwarded
to the trial court in which he asserted his right to a speedy trial and made requests to discover
the State's evidence. Subsequently, Boykin waived his right to a jury and his case went to
trial before the court on June 13, 2006. Following presentation of the evidence, the trial
court found Boykin guilty of sexual assault and assessed his punishment at twenty years'
confinement. 

 Boykin timely filed a notice of appeal. Boykin then filed a motion for new trial that
was unaccompanied by any affidavits or other evidence, and requested that the district clerk
file, docket, and forward the motion to the trial court for a ruling. The trial court
subsequently denied the motion without conducting an evidentiary hearing. 

DISCOVERY

 In Boykin's first issue, he argues that the State's failure to produce material evidence
violated his due process rights. See Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10
L.Ed.2d 215 (1963). Specifically, Boykin complains that the State did not produce a sexual
assault examination/forensic report form ("SANE report") to him until trial. He argues that
had the report been produced before trial, he could have called the nurse identified in the
report as a defense witness and elicited testimony from her that would have impeached the
victim's credibility. Boykin also maintains that the State continues to suppress exculpatory
material, namely, a recording of the 911 emergency call from the victim, a recording of the
victim's interview with the police, and several police reports and summations, which would
have assisted him in impeaching the victim's testimony. 

 The State's suppression of evidence favorable to a defendant violates due process if
the evidence is material to either guilt or punishment. Brady, 373 U.S. at 87; Harm v. State,
183 S.W.3d 403, 406 (Tex. Crim. App. 2006) (en banc). Material evidence is evidence
which, in reasonable probability, if disclosed, would have altered the outcome of the trial. 
Hampton v. State, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). The State has a duty to
disclose material evidence even if the defendant has not requested the evidence; this duty to
disclose encompasses both impeachment and exculpatory evidence. See United States v.
Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); United States v. Bagley, 473 U.S.
667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). For a defendant to establish reversible
error under Brady as a result of the State's failure to disclose evidence, he must show that: 

 1) the State failed to disclose evidence, regardless of the
prosecution's good or bad faith; 

 2) the withheld evidence is favorable to him; [and] 

 3) the evidence is material, that is, there is a reasonable
probability that had the evidence been disclosed, the outcome of
the trial would have been different.


 Under Brady, the defendant bears the burden of showing that, in
light of all the evidence, it is reasonably probable that the
outcome of the trial would have been different had the
prosecutor made a timely disclosure. "The mere possibility that
an item of undisclosed information might have helped the
defense, or might have affected the outcome of the trial, does
not establish 'materiality' in the constitutional sense."


Hampton, 86 S.W.3d at 612 (citations omitted). 

 During trial, Boykin obtained a copy of the SANE report from the State. After
reviewing the report, Boykin offered it into evidence and then used it during his cross-examination of a witness. Presenting evidence claimed to be exculpatory can make a Brady
violation harmless, unless the defendant shows a reasonable probability that an earlier
disclosure would have made the outcome of the proceeding different. See Marshall v. State,
210 S.W.3d 618, 636 (Tex. Crim. App. 2006). Because Boykin presented the evidence
contained in the report to the trier of fact, we find that any potential Brady violation based
on the report's late disclosure was harmless. See id.

 Boykin's claim that an earlier production of the report would have allowed him to call
the nurse to impeach the victim's testimony fails as well. The record contains no affidavit
from the nurse to support Boykin's claim that she would have provided impeaching
testimony. Additionally, Boykin does not argue that the nurse's potential testimony would 
have provided information not contained in the SANE report that he introduced into
evidence. Specifically, Boykin suggests that the nurse would have testified that the victim
lacked visible physical injuries or trauma. Even if this were true, the victim admitted during
her cross-examination that she did not exhibit any bruises, scratches, or marks from the
assault. Thus, the nurse's potential testimony would not have impeached the victim. In
summary, nothing in the record supports Boykin's claim that the nurse's testimony would
have assisted him in impeaching the victim's testimony. In fact, the nurse's note in the
SANE report reflects that the victim was "teary eyed during history of assault and during
exam" and was "visibly upset." It appears that had Boykin called the nurse as a witness, she
would have provided testimony tending to show that the victim was assaulted, rather than
testimony consistent with Boykin's claim that he and the victim had consensual sex. 

 Boykin also fails to meet his burden of showing that the nurse's testimony would have
been material to his defense. The transcript of the trial reflects that the SANE report was
admitted into evidence. Boykin elicited testimony from two of the State's witnesses that they
saw no physical injuries on the victim, and the victim testified that she had no bruises,
scratches, or marks from the assault. Boykin's argument merely suggests a possibility that
the nurse's testimony might have helped his defense and that her testimony might have
affected the outcome of the trial. This is insufficient to meet his burden of proving that her
testimony would have been material to his defense. See Hampton, 86 S.W.3d at 612. 

 Boykin also provides no evidence to support his argument that the State continues to
suppress material evidence. With respect to the alleged recording of the 911 call, Boykin
presents no evidence that the recording exists. The record supports Boykin's argument that
a call to 911 was placed, but it does not support his claim that the victim made the call after
the assault. Nevertheless, the victim testified that she did not inform the police who
responded to her home that Boykin assaulted her; instead, she told them that she and Boykin
had been arguing. This is consistent with Boykin's assertion that a recording of the 911 call
would have revealed that the victim told the police she and Boykin had only been arguing. 
Therefore, even assuming there is a recording of the 911 call, Boykin has not shown the
alleged recording would provide impeachment evidence or be material to his defense as
required to establish reversible error under Brady. See id. 

 Regarding the recording of the victim's interview with the police, Boykin provides
no evidence of the recording's existence other than alleging that a certain named police
officer was present at the victim's interview with the police. Boykin claims the victim made
several inconsistent statements during her interview and thus, the recording of the interview
would provide impeachment evidence against the victim. At trial, the State provided Boykin
with the victim's written statements. After he reviewed them, Boykin offered into evidence
one of the statements that arguably included exculpatory and impeachment evidence. 
Further, Boykin used the admitted statement and the other statements to support his efforts
to impeach the victim during her cross-examination. Boykin provides no evidence that a
recording of the interview would have provided material evidence to impeach the victim's
trial testimony. See id. The mere possibility that undisclosed information might help the
defense or might affect the outcome of the trial does not establish materiality in the
constitutional sense. Id.

 The State presented the testimony of two police officers who were involved in the
investigation of the offense; their reports were provided to Boykin at trial. Boykin does not
provide evidence that other police reports exist, nor does he point us to evidence that the
alleged additional reports contain evidence material to his defense. Boykin fails to satisfy
the requirements necessary to establish a Brady violation with respect to the alleged non-disclosed police reports. See id. 

 Because we find no Brady violations occurred, Boykin's first issue is overruled. 

DENIAL OF MOTION FOR NEW TRIAL

 In his second issue, Boykin asserts the trial court erred when it denied his motion for
new trial. Boykin also maintains that the trial court abused its discretion by ruling on his
motion without conducting an evidentiary hearing. The State contends the trial court did not
err in denying Boykin's motion for new trial or abuse its discretion in not holding an
evidentiary hearing on the motion because Boykin failed to request a hearing and failed to
provide evidence in his motion that entitled him to relief. 

 We review a trial court's denial of an evidentiary hearing on a motion for new trial
for an abuse of discretion. Wallace v. State, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003)
(en banc). A defendant's right to a hearing on a motion for new trial is not absolute. Rozell
v. State, 176 S.W.3d 228, 230 (Tex. Crim. App. 2005). Generally, a hearing is necessary if
the motion and attached affidavit or affidavits raise matters not determinable from the record
that could entitle the defendant to relief. Id. (citing Wallace, 106 S.W.3d at 108). Besides
a timely filed motion with supporting affidavits that demonstrate reasonable grounds for
relief, the motion must be timely presented to the trial court. See Tex. R. App. P. 21.6;
Rozell, 176 S.W.3d at 230. "[T]o present a motion in the context of a motion for new trial,
the defendant must give the trial court actual notice that he timely filed a motion for new trial
and [that he] requests a hearing on the motion for new trial." Rozell, 176 S.W.3d at 230. 
Thus, if a defendant wants a hearing on a motion for new trial, he must request one. Id. 
Absent a request for a hearing, the reviewing court need not decide whether the trial court
abused its discretion in failing to hold a hearing on a motion for new trial. Id. 

 Here, Boykin timely filed his motion for new trial on June 21, 2006, along with a
written request stating: "Please file, docket, and forward this Motion to the 252nd Criminal
District Court, Hon. Layne Walker, Judge; for a ruling." Although Boykin now claims he
wanted a hearing, the record does not reflect that he asked the trial court for one. Nowhere
in the motion did Boykin request a hearing, nor did his letter seek one. Boykin only
requested the clerk to forward his motion for new trial to the trial court "for a ruling," which,
without more, is not a request for an evidentiary hearing. See id. at 231. We hold that
Boykin failed to request an evidentiary hearing on his motion for new trial. Therefore, any
alleged error in the trial court's failing to hold a hearing was not preserved for our review. 
See id.

 We also consider whether the trial court erroneously denied Boykin's motion for new
trial. Boykin's motion for new trial focuses on the alleged Brady violations concerning the
SANE report and on the examining nurse's potential testimony that allegedly would have
provided evidence of the victim's lack of visible physical injuries. These arguments are
similar to the arguments now raised on appeal. Because Boykin's motion presented no
additional evidence for the trial court to consider, his arguments depend on the trial record. 
As we have previously explained, the evidence is insufficient to show that, in reasonable
probability, the verdict would have been different if the information about which Boykin
complains had been provided to him before trial. See Hampton, 86 S.W.3d at 612. After
examining the entire trial-court record, we find that the trial judge did not abuse his
discretion in denying Boykin's motion for new trial. Boykin's second issue is overruled.


RIGHT TO SPEEDY TRIAL 

 In his third issue, Boykin contends that he was denied his constitutional right to a
speedy trial. See U.S. Const. amend. VI; Tex. Const. art. I, §10. In determining whether
a defendant has been denied this right, the reviewing court balances four factors, which
consist of (1) length of delay, (2) reason for the delay, (3) assertion of the right, and (4)
prejudice to the accused. Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101
(1972); Johnson v. State, 954 S.W.2d 770, 771 (Tex. Crim. App. 1997) (en banc). No single
factor is either a necessary or sufficient condition to the finding of a deprivation of the
speedy trial right, and courts must engage in a balancing process in each individual case. 
Barker, 407 U.S. at 530, 533; Zamorano v. State, 84 S.W.3d 643, 648 (Tex. Crim. App.
2002) (en banc). The application of these factors is a legal question that is subject to de novo
review. Johnson, 954 S.W.2d at 771.

Length of Delay

 Boykin's trial began on June 13, 2006, nineteen months after his arrest. See Shaw v.
State, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003) (length of delay is measured from the
time the defendant is arrested or formally accused). Generally, delays approaching one year
are "presumptively prejudicial" and sufficient to trigger a speedy trial inquiry. See Doggett
v. United States, 505 U.S. 647, 651-52, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992); Shaw, 117
S.W.3d at 889. Consequently, this factor favors Boykin. See Zamorano, 84 S.W.3d at 649. Reason for Delay

 Once it has been determined that a presumptively prejudicial delay has occurred, the
State bears the initial burden of explaining the delay. Emery v. State, 881 S.W.2d 702, 708
(Tex. Crim. App. 1994). Here, the State relies on the occurrence of a natural disaster,
Hurricane Rita, to explain some of the delay. The aftermath of Hurricane Rita accounts for
part of the delay, but the State does not offer an explanation for the remaining delay. 

 The record before us shows that the trial court reset Boykin's trial five times between
his arrest and his trial. The record does not reflect whether one of the parties requested the
court to reset the case, or whether the court reset the case sua sponte. Because Hurricane
Rita explains only a portion of the delay, and because the record is silent regarding the
reasons for the remaining delay, this factor also weighs against the State. See Zamorano, 84
S.W.3d at 649-50. However, we give this factor less weight because there is no evidence that
the State attempted to deliberately delay the trial. See Dragoo v. State, 96 S.W.3d 308, 314
(Tex. Crim. App. 2003). 

Assertion of the Right

 The third Barker factor requires a determination on whether the defendant asserted
his right to a speedy trial. Barker, 407 U.S. at 531-32; see also State v. Munoz, 991 S.W.2d
818, 825 (Tex. Crim. App. 1999) (en banc) (placing the burden on the defendant to assert or
demand his right to a speedy trial). Boykin filed his first motion for a speedy trial shortly
after being indicted in February 2005. On July 8, 2005, he filed a motion to dismiss, in
which, among other things, he complained of the delay in bringing him to trial. Additionally,
Boykin sent various letters to the trial court regarding his speedy trial right. Boykin also filed
a petition for writ of mandamus with this Court, in which he contended that the trial court
failed to rule on his February 2005 motion for speedy trial. (2) We conclude that Boykin's
motions and correspondence alerted the trial court and the State to his assertion of his right
to a speedy trial and to Boykin's lack of acquiescence to the delay. See Zamorano, 84
S.W.3d at 651 n. 40. Boykin's repeated assertion of his right to a speedy trial weighs in his
favor.

Prejudice

 The final factor is prejudice to the defendant, which we assess in light of the interests
that the right to a speedy trial is designed to protect: (1) preventing oppressive pretrial
incarceration, (2) minimizing the anxiety and concern of the accused, and (3) limiting the
possibility that the defense will be impaired. Barker, 407 U.S. at 532; Munoz, 991 S.W.2d
at 826. The last consideration is the most serious "because the inability of a defendant
adequately to prepare his case skews the fairness of the entire system." Barker, 407 U.S. at
532. 

 The fact that Boykin was incarcerated during the entire nineteen months while he
awaited trial constitutes a prima facie showing on the first factor. See Munoz, 991 S.W.2d
at 828. With respect to factor two, Boykin's pretrial anxiety and concern, he did not assert
in his motions and does not argue on appeal that the delay caused him "any anxiety or
concern beyond the level normally associated with being charged with a felony. . . ." See
Shaw, 117 S.W.3d at 890. 

 The third factor, prejudice to the defense, weighs in the State's favor. Excessive delay
presumptively prejudices the defense. Doggett, 505 U.S. at 655-56. However, there is no
evidence of actual prejudice here. Boykin contends the delay impaired his defense because
he lost contact with two witnesses he expected to testify on his behalf. Boykin also maintains
that because these two witnesses were young, the delay eroded their memories of the events. 
 However, Boykin does not show that the witnesses were unavailable at trial, that their
testimony was material to his defense, or that he used due diligence to locate and produce the
witnesses for trial. See Harris v. State, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973);
Marquez v. State, 165 S.W.3d 741, 750 (Tex. App.-San Antonio 2005, pet. ref'd). The only
two eyewitnesses to the actual assault, the victim and Boykin, testified at the trial. Therefore,
Boykin fails to show that the delay prejudiced his ability to defend against the State's case.

 Although Boykin was incarcerated for nineteen months before his trial and he asserted
his right to a speedy trial, he did not provide evidence that he suffered anxiety or distress, or
that his defense was impaired. A natural disaster caused some of the delay, and that delay
should not be attributed to the State. Therefore, balancing the Barker factors, we conclude
that Boykin's right to a speedy trial was not violated. Boykin's third issue is overruled. LEGAL AND FACTUAL SUFFICIENCY REVIEW

 In his fourth and last issue on appeal, Boykin contests the legal and factual sufficiency
of the evidence to support his conviction. He argues that the evidence fails to show his
sexual encounter with the victim was without her consent or that he used physical force and
violence against her. 

 In determining issues of legal sufficiency, we ask if, after reviewing the evidence in
the light most favorable to the verdict, any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. Hooper v. State, 214 S.W.3d 9, 13 (Tex.
Crim. App. 2007) (citing Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61
L.E.2d 560 (1979); Powell v. State, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006); Guevara
v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)). "The reviewing court must give
deference to 'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'"
Hooper, 214 S.W.3d at 13 (quoting Jackson, 443 U.S. at 319). In our review, we should look
at "'events occurring before, during and after the commission of the offense and may rely on
actions of the defendant which show an understanding and common design to do the
prohibited act.'" Id. (quoting Cordova v. State, 698 S.W.2d 107, 111 (Tex. Crim. App.
1985)).

 In determining the evidence's factual sufficiency, we review the evidence in a neutral
light. Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007), petition for cert. filed,
___ U.S.L.W. ___ (U.S. Jul. 17, 2007) (No. 07-5500). "Evidence can be factually
insufficient in one of two ways: (1) when the evidence supporting the verdict is so weak that
the verdict seems clearly wrong and manifestly unjust, and (2) when the supporting evidence
is outweighed by the great weight and preponderance of the contrary evidence so as to render
the verdict clearly wrong and manifestly unjust." Id. (citing Watson v. State, 204 S.W.3d
404, 414-15 (Tex. Crim. App. 2006); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000)). The reviewing court may not reverse for factual sufficiency if "'the greater weight
and preponderance of the evidence actually favors conviction.'" Id. (quoting Watson, 204
S.W.3d at 417). While the appellate court may "second-guess the [fact finder] to a limited
degree, the review should still be deferential, with a high level of skepticism about the [fact
finder's] verdict required before a reversal can occur." Id. (citing Watson, 204 S.W.3d at
417; Cain v. State, 958 S.W.2d 404, 407, 410 (Tex. Crim. App. 1997)).

 A person commits sexual assault if the person "intentionally or knowingly[] causes
the penetration of the . . . sexual organ of another person by any means, without that person's
consent." Tex. Pen. Code. Ann. § 22.011(a)(1)(A). Sex occurs "without consent" when the
offender "compels the other person to submit or participate by the use of physical force or
violence[,]" or when the offender "compels the other person to submit or participate by
threatening to use force or violence against the other person, and the other person believes
that the [offender] has the present ability to execute the threat[.]" Id. § 22.011(b)(1),(2)
(Vernon Supp. 2006). 

 Although Boykin acknowledges that he had sex with the victim, he maintains that it
was consensual. Boykin contends that the victim's testimony is not credible, and concludes
that the State offered no evidence that the sexual encounter was not consensual.

 The State first presented the victim, who testified about her sexual encounter with
Boykin. The victim stated that she had an "on-again, off-again" boyfriend-girlfriend
relationship with Boykin that had existed for approximately four months before the assault. 
The victim testified that she told Boykin she no longer wanted to continue their relationship. 
Several days later, on November 10, 2004, Boykin brought her home from where she
worked. After entering her apartment, Boykin told her that he did not want to end their
relationship. The victim further testified that Boykin then demanded sex, despite his
knowledge that she suffered from a medical condition and had an infection, for which she
was taking medication. Boykin then became angry and forced her to the bed. While Boykin
pinned her down, the victim testified that Boykin told her "that [she] owed him that favor[,]"
and that "he wanted to have sex just one more time." The victim testified that she clearly
told Boykin "no" but that she could not get away. The victim testified that while Boykin held
her down, he took off her clothes and forced her to have sex. Afterwards, Boykin forced her
to take a bath to wash off the evidence and then redressed her. 

 The victim explained that she did not report the assault until later that day when she
called Boykin's parole officer. After speaking with the parole officer, the victim stated that
she then explained the assault to other police officers, who took her to a local hospital for a
sexual assault examination. 

 The victim testified that Boykin pushed his way into her apartment several days later
and demanded that she drop the charge. At that time Boykin had a knife, and although he
did not point the knife at the victim, he threatened to kill her and her family if she did not
drop the charge. The victim testified that she dropped the charge because of these threats,
but before doing so, obtained a signed, witnessed, and notarized document from Boykin that
stated: "I, John Henry Boykin, swear under the penalty of perjury, that I will NOT harm [the
victim], or her family." Later, the victim requested that the police department not drop the
charge. 

 During cross-examination, the victim acknowledged that she did not have any bruises,
marks, or scratches as a result of the assault. Moreover, she stated that she did not initially
report to the police that she had been assaulted when they responded to the 911 call. The
victim also admitted that she did not tell the police, when later requesting that they drop the
charge, that Boykin had threatened to harm her or her family. The victim also admitted that
when she requested that the charge be dropped, she wrote a statement that Boykin did not
rape her, but she scratched out that language. She explained that she did not intend to write
that sentence, but instead, intended to write the second sentence, which states that she was
under a lot of stress and did not want to continue the prosecution of the charge she made
against Boykin.

 Two police officers testified regarding their involvement with Boykin's case. Officer
Hebert testified that the victim explained she had been sexually assaulted by Boykin. Officer
Hebert stated that he also assisted in arranging for the victim's examination by a sexual
assault nurse examiner. On cross-examination, Officer Hebert said he did not notice any
bruises on the victim. Officer Morris, who investigated the assault, interviewed Boykin and
took his statement, which was admitted into evidence. Officer Morris acknowledged that she
did not personally observe any bruises or marks on the victim, nor were there any
photographs indicating such visible injuries, but she explained that the victim gave a
statement in which the victim said that the sexual encounter occurred against her will. 
Additionally, Officer Morris testified that bruises or injuries are not required for a sexual
assault to have occurred and explained that the mere threat of physical force or violence may
be sufficient. With respect to the SANE report, Officer Morris explained that, while the
report reflected no visible physical injuries or trauma, the amount of force required to force
a victim to have sex can vary. Officer Morris disagreed with Boykin's contention that a
victim would necessarily have visible injuries when the weight of the offender and victim
varied greatly. 

 Boykin testified in his own defense. He testified that the sexual encounter was
consensual and occurred after he and the victim argued about her prior boyfriend. He stated
that several days after the alleged assault, he and the victim "worked things out" and the
victim voluntarily stated she would drop the charge. Boykin maintains the victim lied about
the sexual assault. He also testified that he and the victim engaged in consensual sexual
relations after the incident in question. Nevertheless, he provided no cogent explanation
about why he signed a notarized statement in which he agreed not to harm the victim or her
family.

 Two of Boykin's family members testified in Boykin's defense. Both testified that
the victim came to Boykin's mother's house several days after the assault. They agreed that
the victim did not appear upset and that she and Boykin were in a bedroom talking to one
another. One of the family-member witnesses testified that when she went into the bedroom
the victim was lying across the bed. The other family-member witness stated that after the
victim and Boykin were in the bedroom, they came out and joined in the birthday celebration
of another family member. 

 In summary, the parties presented the trier of fact with conflicting evidence about
whether the victim consented to the sexual encounter at issue. Reconciling conflicts in the
evidence is within the exclusive province of the fact finder. Jones v. State, 944 S.W.2d 642,
647 (Tex. Crim. App. 1996); see also Hooper, 214 S.W.3d at 13. The trial court, as fact
finder, was entitled to believe, and apparently decided to believe, the victim's version of the
events. The record contains Boykin's written promise not to harm the victim or her family
members in exchange for the victim's dropping the charge against him. His signature on this
promise is an admission against his interest that he threatened to harm the victim and her
family, and is consistent with the trial court's conclusion that he was guilty of the charged
offense. Thus, the evidence is legally sufficient to show that Boykin, either by physical force
or violence or the threat of physical force or violence, forced the victim to have sex against
her will. It was within the province of the trial court, acting as a reasonable trier of fact, to
conclude that Boykin was guilty of the essential elements of sexual assault beyond a
reasonable doubt. See Hooper, 214 S.W.3d at 13. 

 Additionally, the evidence of Boykin's guilt is factually sufficient to support Boykin's
conviction for sexual assault. We have reviewed all of the evidence and considered Boykin's
arguments about the reliability of the victim's testimony and the lack of her visible physical
injuries. The fact finder may believe all, some, or none of any witness's testimony. See
Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986) (en banc); Jaggers v. State, 125
S.W.3d 661, 672 (Tex. App.-Houston [1st Dist.] 2003, pet. ref'd). In this case, the fact
finder believed that the evidence demonstrated Boykin sexually assaulted the victim and
rejected his testimony to the contrary. Contrary to Boykin's theory, visible physical injuries
are not required to show sexual assault. See Tex. Pen. Code Ann. § 22.011(a)(1), (b)(1),
(b)(2). We find that the evidence supporting the verdict is not outweighed by the great
weight and preponderance of the evidence and is not so "weak" that it renders the verdict
"clearly wrong and manifestly unjust." See Roberts, 220 S.W.3d at 524. The evidence favors
conviction. See id. Accordingly, Boykin's fourth issue is overruled. We affirm the trial
court's judgment.

 AFFIRMED.


 ____________________________

 HOLLIS HORTON

 Justice 


Submitted on June 7, 2007

Opinion Delivered September 5, 2007

Do Not Publish


Before McKeithen, C.J., Kreger and Horton, JJ.
1. Because pertinent provisions of Tex. Pen. Code Ann. § 22.011 have not
substantively changed since 2004, we cite to the current version.
2. See In re John Henry Boykin, No. 09-05-353 CV, 2005 Tex. App. LEXIS 8211, at
*2 (Tex. App.-Beaumont September 22, 2005, orig. proceeding [writ denied]) (mem. op.). 
In deciding Boykin's request for a writ of mandamus, we concluded that because the trial
court denied his motion for a speedy trial by a "de facto ruling," Boykin was not entitled to
the relief he sought. Id.